IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT J. LARRY,                                    Civ. No. 09-663-AC

                Plaintiff,              FINDINGS AND
                                                    RECOMMENDATION

     v.

TERESA SCHMID, Executive Director of
Oregon State Bar; THE OREGON STATE
BAR; CHRIS MULLMAN, and SCOTT
MORRILL, in their individual and official
capacities; ERIC NISLEY, and CALVIN
CURTHS, in their individual capacities,


          Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

     Plaintiff Robert J. Larry ("Larry") has alleged several claims against Defendant Eric Nisley

("Nisley"), District Attorney of Wasco County. The claims revolve around Larry's 2005 arrest and conviction for reckless endangerment of another. Larry alleges claims against Nisley under 42 U.S.C. § 1983 ("section 1983") for violations of his rights under the First and Eighth Amendments; under 42 U.S.C. § 1985 ("section 1985"), for conspiracy; for defamation; for intentional infliction of emotional distress ("IIED"); for assault; and for breach of fiduciary duty. Nisley moves for summary judgment on the grounds that Larry failed to adequately allege several claims, failed to file tort-claim notices, and that these claims are otherwise barred under the doctrine of prosecutorial immunity.

*Factual Background*

I.    The Arrest and Criminal Action Against Larry

At all times relevant to this motion, Nisley was District Attorney in Wasco County, Oregon. (Nisley Aff. ¶ 1.) On August 1, 2005, Larry was arrested for allegedly attacking an acquaintance, Walunda Harris ("Harris"). Larry claims that Harris attacked him in a McDonald's parking lot. (Complaint ("Compl.") ¶ 17-18.) Larry was "booked into jail, indicted and subsequently went to trial" on nine criminal charges, including a charge of attempted murder. (Compl. ¶ 19.) He was convicted on only one count, reckless endangerment, for endangering his son. This is reflected in an August 17, 2007, judgment entered in Wasco County Circuit Court. (Larry Supplemental Declaration ("Supp. Decl.") 1-3.) According to Larry, the presiding trial judge, Judge Huckleberry, made various comments to suggest that Nisley had behaved inappropriately in prosecuting Larry's case. Larry's attorney, Geoffrey Gokey, recalls that at sentencing Judge Huckleberry suggested that Larry's probation "be transferred to Lincoln County and be administered by the District Attorney of that county[,]" and that all parties, including Nisley, the District Attorney of Lincoln County, and

Larry himself, agreed to this transfer.  (Larry Supp. Decl. 13.)

On August 22, 2007, Harris wrote a letter to Judge Huckleberry regarding the "no contact order" included in Larry's conditions of probation, a condition that Harris had asked Nisley to request as a condition at Larry's sentencing.  (Larry Supp. Decl. 20.)  According to Harris, Larry was violating the order and driving by her house.  Harris also contacted Nisley and Nisley suggested that Harris take a photograph of future violations.  Shortly thereafter, on September 25, 2007, Nisley wrote a letter to Judge Huckleberry stating that "[his] office [was] no longer serving as the agent of the State in this matter[]" because Larry's "probation [had been] transferred to Lincoln County at sentencing."  (Larry Decl. 3.)

Larry further alleges that Nisley advised Harris to file a stalking complaint against Larry without an evidentiary basis thus causing Larry undue stress, even though he had knowledge that Larry was uniquely susceptible to fears of police brutality and false arrest.  (Compl. ¶¶ 30-36.)

On October 11, 2007, Nisley again wrote to Judge Huckleberry to apprise him of correspondence from Larry.  He included the correspondence with the letter and wrote:  "Based on the content of these letters, I am concerned that Mr. Larry may be suffering from an anger problem or possibly some more serious mental health problem."  (Beel Decl. Ex. 4.)  On October 30, 2007, in response to a notice of hearing in this case, Nisley contacted the Wasco County Circuit Court to inform it that he believed the matter was being handled by Lincoln County.  (Beel Decl., Ex. 3 at 2.)

On October 31, 2007, an article appeared in Williamette Week about Larry's case.  The article stated:  "Nisley says he's still convinced Larry is guilty of all the charges."  (Beel Decl., Ex. 2 at 3.)  Nisley also made a statement to *The Dalles Chronicle*, that, in denying Larry's request for acquittal on all charges, the judge essentially ruled that it was "more likely than not" that the events

giving rise to the charges against Larry actually happened.  (Beel Decl., Ex. 1 at 5.)

II.    The Current Civil Action

Larry filed this action in federal court on June 15, 2009.  On March 24, 2010, Larry sent a letter to the director of the Oregon Department of Administrative Services, giving notice of his intent to file numerous tort claims against the State of Oregon and Nisley.  (Larry Decl. 4.)

In his materials, Larry has included a number of requests for production and requests for documents issued on April 22 and 26, 2010, to attorneys for Nisley and Curths.  These requests were the subject of a motion to compel filed by Larry on November 22, 2010, which motion the court has since denied.  (Docket No. 138.)

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c) (2008).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

*Discussion*

I.    Conferral

As a preliminary matter, Larry contends that meaningful conferral regarding this motion did not take place as required by Local Rule 7, which provides that "the first paragraph of every motion must certify that:  [t]he parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so[.]"  Local Rule of Civil Procedure 7-1(a)(1)(A).  The rule is accompanied by a practice note which states that where a party is proceeding pro se,

"counsel should document a good faith effort to consult with the unrepresented party," compliance with which will be determined by the court "on a case by case basis." *Id.* at Practice Tip 2.

According to Larry, the parties agreed to conduct conferral via email and Nisley's attorney, Pierson, failed to comply with their agreement. Larry refers to emails between himself and Pierson to show that conferral did not take place. The emails submitted by Larry with his declaration do not bear directly on this point, though in one email Larry wrote that Pierson should contact him by email and allow twenty-four hours for a response. (Larry Declaration 23.) Larry's email also advised Pierson that, in his opinion, calls from a third party do not qualify as meaningful communication in satisfaction of the local rules; it is not clear that Larry is referring to Rule 7 conferral, however. Nisley responds that conferral regarding these motions took place in person and, furthermore, that additional attempts to confer with Larry by phone were unsuccessful because Larry did not answer the phone, did not have functioning voicemail, and did not return Pierson's call.

The purpose of the conferral requirement is to facilitate communication between opposing parties and encourage resolution of matters before formal motions are filed. Where the parties' interests are particularly disparate with respect to a given motion, conferral is less likely to produce meaningful agreement and resolution. The parties disagree as to whether meaningful conferral actually took place, and the record evidence does not clearly resolve this dispute. That said, in light of the unlikelihood that the parties would have achieved consensus with regard to this motion for summary judgment, in this case the court is less concerned with the formal requirements of conferral, such as they are. Larry does not dispute that he was on notice of the motion, but objects to the form in which this notice was given. On that basis alone the court declines to further delay resolution of this motion for failure to achieve Larry's preferred form of conferral.

II.    Prosecutorial Immunity

Prosecutorial or quasi-judicial immunity protects prosecutors from liability for conduct in

"initiating a prosecution and in presenting the State's case," or when their activities are "intimately

associated with the judicial process." *Imbler v. Pachtman,* 424 U.S. 409, 430-31 (1976) (extending

the common law absolute liability for malicious prosecution and false or defamatory statements

made by a prosecutor in judicial proceedings to section 1983 actions). The application of absolute

prosecutorial immunity depends on the nature of the allegedly unlawful actions. *Broam v. Bogan*,

320 F.3d 1023, 1029 (9th Cir. 2003).

> Thus, in deciding whether to accord a prosecutor immunity from a civil suit for
> damages, a court must first determine whether a prosecutor has performed a
> quasijudicial function. If the action was part of the judicial process, the prosecutor
> is entitled to the protection of absolute immunity whether or not he or she violated
> the civil plaintiff's constitutional rights.

*Id.* (citing *Imbler*, 424 U.S. at 430). Absolute prosecutorial immunity is not defeated by a showing

of malicious or wrongful conduct. *Imbler*, 424 U.S. at 431. "While the 'duties of the prosecutor in

his role as advocate for the State involve actions preliminary to the initiation of a prosecution and

actions apart from the courtroom,' absolute prosecutorial immunity will be given 'only for actions

that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing

conduct.'" *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009).

Section 1983 applies to the actions of persons acting under color of law. *See* 42 U.S.C. §

1983 (2011) (extending its protections against "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" who

deprives another of rights under the law). Where a state official is sued in his or her individual

capacity, the official qualifies as a "person" for purposes of section 1983 and the state is not

substituted in his or her stead. *Center for Legal Studies v. Lindley*, 64 F. Supp. 2d 970, (D. Or. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)). Prosecutorial immunity shields from liability only those who acted within the scope of prosecutorial duties, where those actions were intimately associated with the judicial process. Thus, it is possible for a prosecutor to act both under color of law and outside the scope of prosecutorial immunity.

Nisley argues that he is entitled to absolute immunity from Larry's claims because, with respect to the events giving rise to these claims, he was acting wholly within the scope of his prosecutorial duties. Larry objects to the application of prosecutorial immunity and argues that, prior to the events giving rise to the claims in this action, Nisley had relinquished his prosecutorial role. Larry argues further that his claims against Nisley are against him in his individual capacity. Nisley counters that, to the extent he was not acting in his official capacity, he was not acting under color of law and thus cannot be liable under 42 U.S.C. § 1983.

A.    *Probation*

Larry argues that Nisley was not acting as a prosecutor in his advocatory role when he interfered with probation determinations by Judge Huckleberry, because a prosecutor's role in probation matters is merely administrative. Nisley responds that participation in probation matters involves a prosecutor's duties as an advocate of the state and thus falls within the confines of prosecutorial immunity. The Ninth Circuit has stated that a prosecutor's immunity extends to post-trial handling of a case: "Like allegations of misconduct during the trial preparation stage, allegations of misconduct in a prosecutor's post-trial handling of a case can generally be corrected without resort to a civil trial for damages." *Demery v. Kupperman*, 735 F.2d 1139, 1145 (9th Cir. 1984). Thus, where a prosecutor is acting in a prosecutorial capacity and advocating for the state

post-trial, prosecutorial immunity remains in effect.  It follows, however, that when a prosecutor is

no longer handling a case, he or she is no longer shielded from suit by prosecutorial immunity.

The court concludes that once Nisley relinquished his position as prosecutor in Larry's case,

i.e., once the case was transferred from Wasco County, where Nisley acted as District Attorney, to

Lincoln County, Nisley ceased to be shielded by prosecutorial immunity.  However, questions of fact

remain regarding the precise nature of Nisley's involvement in Larry's probation and the timing of

the allegedly unlawful acts.  These questions must be resolved by a finder of fact and summary

judgment is thus inappropriate.

> B.    *Statements to the Press*

Larry argues that Nisley was acting outside his advocatory role as a prosecutor when he told

the media that he believed Larry guilty of all crimes for which he was originally charged.  In his

response materials Nisley concedes that Nisley's statements to the press, made after the case

transferred to another county, are not shielded from liability by prosecutorial immunity.

## III.    Tort Claims Notice

The Oregon Tort Claims Act ("OTCA") provides that, for an action against a "public body

or an officer," notice of the claim or claims must be given to the accused party within a specified

period of time.  In general, notice must be given "within 180 days after the alleged loss or injury."

OR. REV. STAT. 30.275 (2009).  This notice may be formal, actual, or by commencement of action.

Formal notice is a written statement giving notice of a claim, describing its time, place, and

circumstances, and stating the claimant's name and mailing address.  OR. REV. STAT. 30.275(4).

Actual notice occurs when the "time, place, and circumstances giving rise to the claim" are

communicated to the accused party in such a way that a "reasonable person would conclude that a

particular person intends to assert a claim . . . ." OR. REV. STAT. 30.275(6). Actual notice "need not specify precisely *what* claim[]" the claimant intends to bring, but must at least "warn of the plaintiff's intent to bring '*a* claim[.]'" *Flug v. University of Oregon*, 335 Or. 540, 554, 73 P.3d 917 (2003) (emphasis in original). Commencement of an action within the above-stated time frame also suffices as notice for purposes of the OTCA. OR. REV. STAT. 30.275(3)(c).

Under the OTCA, the state is "subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties . . . ." OR. REV. STAT. 30.265(1) (2009). Thus, where a state employee acts outside the scope of his or her employment, the state is not liable and a tort claim notice is not required prior to initiating a civil action. *See Berry v. State of Oregon*, 141 Or. App. 225, 229, 917 P.2d 1070 (1996) ("a plaintiff does not need to give the state notice of claim under ORS 30.275 in order to sue a state employee for an individual tort."). As such, the court must analyze whether the alleged conduct falls within the scope of the employee's official duties.

In his supplemental opposition, Larry concedes that actions within Nisley's scope of employment were not properly noticed pursuant to the OTCA and are thus barred. He argues, however, that his claims against Nisley were alleged in Nisley's individual capacity and notice under the OTCA is not required. Furthermore, in Larry's view, Nisley merely characterized the alleged conduct as within the scope of his employment and, in doing so, asserted a legal conclusion. Larry argues that this is a factual determination that precludes summary judgment. Nisley responds that, although the scope of his employment is relevant to the OTCA inquiry, it may be decided upon summary judgment where there is no genuine issue of material fact as to whether the alleged conduct fell within that scope, i.e., "where only one reasonable conclusion can be drawn from the facts."

*Stanfield v. Laccoarce*, 284 Or. 651, 655, 588 P.2d 1271 (1978).

In *Stanfield*, the Oregon Supreme Court articulated three factors with which to evaluate whether conduct is within the scope of employment:

> In deciding whether an employee was acting within the scope of his employment, the factors to be considered are whether the act in question is of a kind the employee was hired to perform, whether the act occurred substantially within the authorized limits of time and space, and whether the employee was motivated, at least in part, by a purpose to serve the employer.

*Id.* The Oregon Supreme Court has characterized these three elements as "requirements," all of which must be met to demonstrate conduct within the scope of employment. *Lourim v. Swensen*, 147 Or. App. 425, 433, 936 P.2d 1011 (1997) (citing *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)).

### A.    Probation

Larry alleges that Nisley unlawfully interfered with Larry's probation.  Nisley argues that communicating with the court about a probation matter is well within the scope of a prosecutor's employment.  He cites Oregon Revised Statutes 8.660, which states:  "The district attorney shall attend the terms of all courts having jurisdiction of public offenses within the district attorney's county, and, except as otherwise provided in this section, conduct, on behalf of the state, all prosecutions for such offenses therein." OR. REV. STAT. 8.660 (2009).  Chapter 137 deals generally with matters of probation and deems them within the jurisdiction of the court.  *See* OR. REV. STAT. 137.520, et seq., ("Probation and Parole by Committing Magistrate").  Furthermore, the involvement of the district attorney is referenced repeatedly in the probation subchapter.  *See e.g.,* OR. REV. STAT. 137.533, 137.540, 137.545, 137.547, 137.533, 137.593, 137.595, and 137.599 (2009).  A review of this section reveals that a district attorney is actively involved with probation matters and, generally,

probation matters fall within the scope of a prosecutor's employment.

Even so, Larry argues that the actions taken by Nisley were outside the scope of his employment because they occurred after Nisley relinquished his role as prosecutor when the case was transferred to a different county.  Specifically, Larry alleges that Nisley acted in his personal capacity when he shared correspondence between himself and Larry with Judge Huckleberry, and when expressed his belief to Judge Huckleberry that Larry had either an anger problem or a mental impairment.  This was improper, according to Larry, because it took place after Nisley had relinquished his duties as prosecutor in Larry's case.

The court agrees that Nisley may be held liable for conduct occurring after he relinquished his duties as prosecutor in Larry's case, such that he was acting outside of the scope of his employment.  Accordingly, there is a genuine issue of material fact as to whether the OTCA applies to Nisley's involvement in Larry's probation and summary judgment is inappropriate.

B.    *Statements to the Press*

Larry also argues that Nisley made comments to the press outside the scope of his employment.  Nisley responds that his communications with the media occurred during the course of his employment and met each of the requirements under the *Stanfield* test.  Nisley cites his own declaration for the proposition that communicating with the media was one function he was hired to perform; that the communications took place from his office during normal working hours and were in response to outside inquiries; and that the statements were made in service to the people of Wasco County.

On the record before the court, Nisley has failed to demonstrate that, in speaking with the media in October 2007 about Larry's case, he was acting within the scope of his employment.  There

FINDINGS AND RECOMMENDATION          11                              {KPR}

is at least a question of fact as to whether, in light of the timing and nature of the statements, they were made in Nisley's capacity as district attorney. Accordingly, Larry's failure to comply with the notice requirement of the OTCA does not bar Larry's state law claims against Nisley in his personal capacity as a matter of law.

IV.    Insufficiently Pleaded Claims

Notwithstanding the viability of the OTCA notice and prosecutorial immunity defenses asserted by Nisley, he additionally argues that Larry has failed to state the following claims: First and Eighth Amendment violations under section 1983; conspiracy under section 1985; defamation; IIED; assault; and breach of fiduciary duty. In light of the court's conclusions, above, that Larry's failure to give notice under the OTCA does not completely bar his state law claims and that Nisley is not wholly immune for his alleged conduct under the doctrine of prosecutorial immunity, the court will evaluate whether, based on the conduct for which Nisley *may* be liable, Larry has successfully stated a claim for relief.

    *A.    Section 1983*

Larry alleges that Nisley violated his First Amendment rights, but does not specify which particular right was violated or what conduct gave rise to that violation. The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. AMEND. I. Larry relies on his factual allegations and a conclusory statement that Nisley "acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of his rights as foresaid." (Compl. ¶ 51.)

FINDINGS AND RECOMMENDATION        12                                {KPR}

To the extent that the conduct for which Nisley is allegedly liable is not subject to the OTCA or prosecutorial immunity defenses, the allegations are scant and fail to implicate the protections of the First Amendment.  Nisley allegedly made statements to the press about Larry's guilt which Larry claims were inappropriately made under color of state law.  Larry provides no guidance as to how such claims may implicate the freedoms protected by the First Amendment.  The court concludes that Larry has failed to state a claim for such violation.

Larry also alleges a violation of his Eighth Amendment right to be free from excessive bail, excessive fines, and cruel and unusual punishment.  *See* U.S. CONST. AMEND. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").  Again, Larry does not provide additional guidance as to what particular conduct by Nisley resulted in such violation, nor can the court discern any conduct on the face of the complaint.  As such, Larry has failed to state a claim for a violation of the Eighth Amendment upon which relief may be granted.

*B.     Section 1985*

Larry alleges that Nisley conspired with others "for the purpose of retaliation, coercing, defaming and intimidating [Larry] in an attempt to" deprive him of freedom, equal protection of the law, and otherwise harm him for attempting to pursue his rights under the laws of the United States and the state of Oregon.  Section 1985 makes actionable a private conspiracy where the conspirators seek to deprive another of equal protection of the law.  However,

> in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia*, (1) that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action," and (2) that the conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment[.]"

FINDINGS AND RECOMMENDATION        13                                    {KPR}

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-268 (1993) (quoting *Griffin v.*

*Breckenridge*, 403 U.S. 88, 102 (1971) and *Carpenters v. Scott*, 463, U.S. 825, 833 (1983) (internal

citations omitted)).

Here, Larry alleges a conspiracy between Nisley and Harris to procure a stalking order against

him. Larry does not allege, however, that pursuit of this order was motivated by his membership in

a suspect class, nor does he allege a plausible factual basis upon which this could be premised for

purposes of stating a claim. This claim should be dismissed.

    C.    *State Law Claims*

The court above concluded that Larry's state law tort claims are not barred for lack of notice

under the OTCA to the extent that Nisley acted outside of the scope of his employment. Specifically,

under the particular facts of this case, Nisley may be liable for conduct that occurred after Larry's

case was transferred to another county, and Nisley explicitly relinquished his role as prosecuting

attorney. This potentially-actionable conduct includes statements to the press expressing his

personal opinion as to Larry's guilt and communication with Judge Huckleberry and Harris regarding

the terms of Larry's probation.

    i.    Defamation

"The prima facie elements for defamation under Oregon law are: 1) the making of a

defamatory statement; 2) the publication of the defamatory material; and 3) a resulting special harm

(unless the defamatory statement gives rise to presumptive special harm)." *Roskowski v. Corvallis*

*Police Officers' Ass'n*, Civ. No. 03-474-AS, 2005 U.S. Dist. LEXIS 46241, at *32-33 (D. Or. Mar.

9, 2005) (citing *L&D of Oregon, Inc. v. American States Insurance Company*, 171 Or. App. 17, 22,

14 P.3d 617 (2000)); *see also Morlan v. Qwest Dex, Inc.*, 332 F. Supp. 2d 1356, 1361 (D. Or. Aug.

25, 2004) ("To establish a claim for defamation, a plaintiff generally must show harm resulting from defendant's publication to a third party of a defamatory, false statement of and concerning the plaintiff." (citing *Wallulis v. Dymowski*, 323 Or. 337, 342-43, 918 P.2d 755 (1996))).  A defamation claim must be premised on a statement that is actually false.  "Even if a statement is capable of a defamatory meaning, there can be no viable action for defamation if the statement is substantially true."  *Rycraft, Inc. v. Ribble Corp.*, Civ. No. 09-1573-KI, 1999 U.S. Dist. LEXIS 6052, at *19 (D. Or. Apr. 26, 1999) (citing *Bahr v. Ettinger*, 88 Or. App. 419, 422, 745 P.2d 807 (1998)).

Thus, to the extent that Nisley expressed his opinion about Larry his statements are not actionable as defamatory.  "Whether an allegedly defamatory statement is one of opinion or fact is a question of law."  *Gardner v. Mt. Hood Polaris, Inc.*, 563 F.3d 981, 986 (9th Cir. 2009) (citing *Slover v. Or. Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 927 P.2d 1098 (1996)).  The Ninth Circuit has held that "the threshold question . . . in a defamation claim is 'whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact.'"  *Id.* at 987 (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)).  To answer this threshold question, courts in this circuit apply a three-part test:  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false."  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1994) (citing *Unelko*, 912 F.2d at 1053).

Here, Larry has alleged defamation arising from two statements Nisley made to the media regarding whether Larry was actually guilty of the charges of which he was acquitted.  In the *Willamette Week* article, Nisley expressed his belief that Larry was guilty of all of the charges for

FINDINGS AND RECOMMENDATION        15                                {KPR}

which he was originally charged.  The article stated: "Nisley says he's still convinced Larry is guilty of all the charges." (Beel Decl., Ex. 2 at 3.)  This particular statement is a statement of Nisley's personal opinion.  The manner in which Nisley's belief is characterized, that Nisley himself is convinced of Larry's guilt, makes clear that it is not an assertion of objective fact, but rather an expression of opinion and, accordingly, cannot support a defamation claim.

In another article, published in *The Dalles Chronicle*, Nisley stated that Judge Huckleberry's ruling on Larry's motion for acquittal was a de facto ruling that the events were "more likely than not" to have taken place as asserted by the prosecution.  This statement presents a closer question as to whether it was intended to be an assertion of objective fact.  First, the statement is presented to the court by way of Nisley's deposition wherein Larry, who at the time was representing himself, read a portion of the article into the record:  "In this statement it says District Attorney Nisley said the judge found the events, quote, more likely than not, unquote, happened, because he denied a request for a judgment of acquittal on all charges, even the attempted murder." (Beel Decl., Ex. 1 at 5.)  Thus, the article itself is not currently before the court and it can only evaluate its content as presented in the deposition excerpt.  Second, Nisley is not commenting directly on Larry's guilt, but rather on the legal implication of Judge Huckleberry's ruling.  That said, Nisley presented his legal analysis of the judge's ruling without apparent equivocation and, in his position as District Attorney, should expect that such pronouncements would be treated as fact by a lay readership.

If the court assumes that the statement is asserted as objective fact, the question remains whether the statement is actually false and, thus, susceptible to a defamation claim.  Under Oregon law:  "In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal.  The court shall grant the motion if the

evidence introduced theretofore is such as would not support a verdict against the defendant." OR. REV. STAT. 136.445 (2009). The Oregon Supreme Court characterizes the standard for a motion for aquittal: "In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or. 332, 339, 768 P.2d 391 (1989) (citing *State v. Harris*, 288 Or. 703, 721, 609 P.2d 798 (1980)). Thus, where a court rules against a defendant on a motion for acquittal, it has merely concluded that a jury could find the defendant guilty beyond a reasonable doubt, not that the defendant is "more likely than not" guilty. By this analysis, Nisley's comment was objectively false and, with respect to the veracity prong of a defamation claim, susceptible to such a claim.

That said, even assuming the falsity of the statement, the court must evaluate whether the statement caused Larry a special harm. Special harm results from "damages for pecuniary loss or loss of material advantage." *Davis v. People's Choice Home Loan*, CV 10-811-PK, 2011 U.S. Dist. LEXIS, at *19 (D. Or. Feb. 4, 2011) (characterizing *Clark v. Morrison*, 80 Or. 240, 245, 156 P. 429 (1916)). In his complaint, Larry alleges that Nisley defamed him for the purpose of "intimidat[ing], harass[ing], and otherwise harm[ing] [Larry], all of his personal and business damage in the amount of $1,000,000, or in an amount proven at trial." (Compl. ¶ 66.) In his prayer for relief, he seeks $50,000 in lost wages stemming from his defamation claim. These allegations, though a slender reed, are sufficient to plead special damages.

The issue of prosecutorial immunity is relevant to this claim. However, the factual issues identified above preclude this court from determining as a matter of law that Nisley was entitled to immunity when he made the statement in question. For the reasons stated, Larry's defamation claim,

based on the statements made by Nisley to *The Dalles Chronicle*, should not be dismissed.

ii.    Intentional Infliction of Emotional Distress

Larry's allegations with respect to his IIED claim are similarly vague.  He alleges that Nisley "acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of his rights as foresaid and intended to intentionally inflict emotion distress on the Plaintiff as foresaid." (Compl. ¶ 69.)  He refers to unspecified acts which were "intended to inflict severe mental or emotional distress on Plaintiff and further knew that emotional distress on Plaintiff was certain or substantially intolerable in the extreme."  *Id*. at ¶ 70.

A claim for IIED is made up of three elements: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct."  *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989). Conduct giving rise to the "extraordinary transgression" must be more than merely "rude, boorish, tyrannical, churlish and mean."  *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, 719 P.2d 854 (1986), abrogated on other grounds by *McGanty v. Staudenraus*, 321 Or 532, 901 P.2d 841.  Rather, the "distress must be so severe that no reasonable person could be expected to endure it."  *Checkley v. Boyd*, 198 Or. App. 110, 131, 107 P.3d 651 (2005) (citing RESTATEMENT (SECOND) OF TORTS, § 46 cmt. i (1965)).  Put another way, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Christofferson v. Church of Scientology*, 57 Or. App. 203, 211 n.7, 644 P.2d 577 (1982), *rev. den.* 293 Or. 456 (1982), *cert. den.* 459 U.S. 1206 (1983) (citation omitted).

Oregon courts have held that defamation may suffice as the sort of conduct that gives rise to

an IIED claim. Such a claim may lie where "a defendant's publication of a defamatory or otherwise significantly stigmatizing statement, knowing the statement to be false, unfounded, or unsubstantiated, is conduct that, if found to be true by a factfinder, constitutes an extraordinary transgression of what is socially tolerable." *Checkley*, 170 Or. App. at 727. Thus, Nisley's allegedly defamatory statements regarding Larry's guilt and the meaning of the court's ruling may give rise to a claim for IIED.

This particular claim was originally recognized in *Hall v. The May Department Stores*, 292 Or. 131, 637 P.2d 126 (1981), *overruled on other grounds*. In *Hall*, the plaintiff, a department store employee, was accused of stealing money from her employer. The court held that the manner in which she was accused could be construed as so abusive as to go "beyond the outer bounds of socially tolerable" conduct. *Id*. at 142. The court observed that the only conduct that could give rise to the IIED claim was conduct that could also be characterized as defamatory speech: "Of course infliction of emotional distress, unlike defamation, can be committed by other means than expression or communication. But in this case we have found no other conduct that could qualify as this tort." *Id.* at 147. Thus, the court recognized an IIED claim based exclusively on defamatory speech.

Such a claim was adequately stated in *Checkley* where the defendants, individual members of a Jehovah's Witnesses congregation and the congregation itself, made unfounded accusations about the plaintiff to his brother, "a mentally disabled person who was especially vulnerable to influence and to whom plaintiff, as [his] guardian, owed special fiduciary duties." *Id*. at 728. The court, in ruling on the defendants' motion to dismiss, found that the allegations "permit[ted] an inference that the [defendants] made those serious accusations against plaintiff either with knowledge that they were false or at least without substantiation." *Id*. The court also noted that the

accusations were made to persuade plaintiff's brother to "seek to remove plaintiff as his guardian."

*Id.*

> The court characterized claims for IIED premised on defamatory statements as follows:
>
> Decisions of both this court and the Oregon Supreme Court consistently have held that a defendant's publication of a defamatory or otherwise significantly stigmatizing statement, knowing the statement to be false, unfounded, or unsubstantiated, is conduct that, if found to be true by a factfinder, constitutes an extraordinary transgression of what is socially tolerable.

*Id.* at 727. This statement is not strictly correct, as it suggests that any defamatory statement automatically gives rise to an IIED claim, rather than the more accurate proposition that defamatory speech may give rise to an IIED claim where it is sufficiently outrageous to cause emotional distress. The *Checkley* court went on to note that "[s]ince *Hall*, our court consistently has reached the same conclusion on similar allegations or evidence, often emphasizing, as adding to the socially outrageous quality of the conduct, the fact that the defamation allegedly was to serve an ulterior purpose or to take advantage of an unusually vulnerable individual." *Id.*

In this case, Nisley's inaccurate characterization of the trial court's ruling on Larry's motion for a directed verdict may amount to a defamatory statement resulting in harm to Larry. It may also give rise to an IIED claim if it was, in fact, a transgression of a degree that challenges the bounds of socially acceptable conduct. The Oregon Court of Appeals has ruled that a false accusation may form the basis of an IIED claim. In *Woods v. First American Title Ins. Co. of Oregon, Inc.*, 102 Or. App. 343, 794 P.2d 454 (1990), the court concluded that the plaintiff had adequately stated an IIED claim based on the allegation that the defendants had "falsely accus[ed] [her] of being a liar, a thief and a fraud before a third person, knowing that the accusations [were] not true, and persuading a police officer to harass the accused person on the basis of those assertions . . . ." *Id.* at 348.

FINDINGS AND RECOMMENDATION        20                        {KPR}

In this case, the court finds that there are genuine issues of material fact that preclude summary judgment on this claim. First, Larry claims that he endured severe emotional distress as a result of Nisley's statements to the press. It is reasonable that an individually would be seriously distressed by a public statement that he or she was "more likely than not" guilty of a series of crimes, including attempted murder. Such distress is even more reasonable where the statement is held out as the ruling of a court of law, particularly where the individual was acquitted of the charges in question. Second, there is no reasonable dispute that, to the extent Larry was distressed by Nisley's comment, Nisley's comment caused the distress as he was the source of the comment and does not dispute its accuracy. Third, it is at least reasonable to conclude that Nisley's comment about Larry exceeded the bounds of socially acceptable conduct. Again, publicly leveling false accusations regarding an individual's guilt on a charge of attempted murder, and representing this accusation as being "more likely than not" true, in spite of the fact that the statement is false and the individual was acquitted of the charge in question, may reasonably be regarded as exceeding the bounds of socially acceptable conduct.

### iii.   Assault

Larry makes no allegation relevant to an assault by Nisley, the remaining defendant, and this claim should be dismissed as insufficiently pleaded.

### iv.   Breach of Fiduciary Duty

Larry makes no allegation relevant to a breach of fiduciary duty claim against Nisley, the remaining defendant, and this claim should be dismissed as insufficiently pleaded.

## V.   Discovery

Larry argues that Nisley's motion for summary judgment is premature because discovery is

not complete and so the evidentiary record has not been fully developed.  Nisley responds that the facts material to disposition of this motion, namely whether Nisley acted in the scope of his employment or in pursuance of his prosecutorial duties, have been fully developed and that Larry has failed to identify other facts or discovery needed to make his case.

Federal Rule of Civil Procedure 56(d) allows the nonmoving party to submit an affidavit asking the court to allow specified discovery that will enable the party to oppose the motion. "Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment." *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980).   "When a party opposing a motion for summary judgment cannot present 'facts essential to justify [her] opposition' to the motion, [Federal Rule of Civil Procedure] 56(f)[1] allows the party to submit an affidavit stating such reasons.  The opposing party then has the burden to show what facts she hopes to discover to raise an issue of material facts.  The [c]ourt may then order a continuance to permit additional discovery."  *Benson v. Long Term Disability Income Plan for the Emloyees of Xerox*, 108 F. Supp. 2d 1074, 1080 n.5 (C.D. Cal. 1999) (internal citations omitted).

In his supplementary materials, Larry argues that he should be able to conduct additional discovery to reveal information regarding statements made by Nisley to third parties about Larry's criminal prosecution and probation, and whether those statements were within the scope of Nisley's employment or his prosecutorial duties.  Larry maintains that this information would establish whether summary judgment was appropriate in this case, and thus have the potential to be outcome

---

[1] FRCP 56(f) was redesignated 56(d) as part of the 2010 Amendments to the civil rules.

determinative.

The court is not persuaded that additional discovery is necessary to properly resolve this motion. Larry has not identified specific material facts he seeks to discover beyond those that might generally shed light on the facts already in the record and Larry has failed to identify any other reason why he is unable to oppose the motion. Larry's conclusory contention that discovery is not complete is insufficient to delay disposition of this motion and the court denies the request.

*Conclusion*

For the reasons stated, Nisley's motion for summary judgment (#50) should be granted as to Larry's section 1983, section 1985, assault, and breach of fiduciary duty claims. The motion should be denied as to Larry's defamation and IIED claims.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due November 4, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of October, 2011.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge


FINDINGS AND RECOMMENDATION        23                                {KPR}